IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| WILLIAM BRANDON ROBERTS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:03-CV-0266 |
| | § | |
| DOUGLAS DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Before the Court is a Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner WILLIAM BRANDON ROBERTS wherein he challenges the results of prison disciplinary proceeding Case No. 20030016428. For the reasons hereinafter set forth, it is the opinion of the undersigned United States Magistrate Judge that the petition for federal habeas corpus relief should be DENIED.

I.
STATE COURT CONVICTION

Petitioner is in the lawful custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), as a result of a judgment and sentence out of the 43rd Judicial District Court of Parker County, Texas. On November 6, 2001, in *State v. Roberts*, No. 14,040, petitioner pleaded guilty to the second degree felony offense of intoxication

manslaughter, and was sentenced to a term of imprisonment of ten (10) years. Further elaboration of the specifics of petitioner's state court conviction and any post-conviction proceedings are unnecessary.

## II.
## DISCIPLINARY PROCEEDING

On September 14, 2002, Officer N. Alexander, at the Ware Unit in Colorado City, Texas, filed an Offense Report charging petitioner with "Level 2, Code 21.0 fighting without a weapon or assaulting an offender without a weapon which results in a non-serious injury." The Offense Report alleged petitioner "did assault offender Sargent, Dusten TDCJ #1071020 without a weapon by punching offender Sargent several times in the face with closed fists, moreover the assault did result in injuries that required treatment up to first aid." The Offense Report indicated the charging officer was an eyewitness to the altercation. In the Incident Data Form completed by Officer Alexander, she reported "two white offenders" were involved in the incident and one offender "punched using a clinched fist" and the other offender "attempted to defend himself." Officer Alexander reported petitioner and inmates Sargent and Travis Robinson were involved in the incident, with Sargent receiving minor injuries and petitioner and inmate Robinson not receiving any injuries. Officer Alexander indicated the incident was "gang related" because of the "victim's admittance."

Injury Reports filed that same date indicated petitioner had a minor injury in the form of a "reddened area approx. 2-3" behind each ear neck area," and that such injury occurred as the result of an altercation; that offender Sargent had a minor injury in the form of "approx. 1-1 ½" laceration to [left] eyebrow area – 2 m skin scrape to end of nose area" as a result of an

altercation; and that offender Robinson had a minor injury in the form of "approx. 2-3" reddened area to skin on both shoulder areas."

Investigation into the incident began on September 14, 2002. Petitioner denied hitting inmate Sargent, but Officer Alexander averred petitioner did engage in a fight, listing Officer Casares as a witness to the incident. On September 15, 2002, Officer Casares submitted a witness statement wherein he averred seeing inmate Sargent "standing in the restroom trying to clean blood off his face." Officer Casares did not implicate petitioner in his statement.

On September 17, 2002, a Hearing Officer conducted a prison disciplinary proceeding on the charges against petitioner. Petitioner was present at the hearing and acknowledged he had been advised of his right to call witnesses. In his opening statement, petitioner reiterated his claim that he did not hit inmate Sargent, and referenced a statement from Sargent wherein Sargent stated he did not know who hit him, that he may have blacked out, and that the assault did not happen in the restroom. Petitioner also stated he had a witness "Travis" who was in the shower when the assault was alleged to have occurred. When the Hearing Officer asked if petitioner had any evidence or witnesses to present, however, counsel substitute stated that she did not have any witnesses or documentary evidence to present.

The charging officer, Officer Alexander, appeared as a witness at the hearing by telephone. At the hearing, Officer Alexander testified she observed the inmates fighting in the restroom and that she specifically saw them "exchanging blows." When the Hearing Officer asked if petitioner had any questions for Officer Alexander, both petitioner and his counsel substitute stated that they did not. In his concluding statement, petitioner again referenced a statement Captain Lujan had obtained from inmate Sargent the night before wherein Sargent

stated he was not assaulted in the restroom. Petitioner also referenced the purported testimony from "Travis" that no assault occurred in the restroom, and also identified another inmate who was "supposed to be in the shower" with "Travis" when the alleged assault occurred in the restroom. Petitioner concluded the "only proof" he had that Officer Alexander was lying when she stated she observed petitioner assault inmate Sargent in the restroom was this "evidence" that the assault did not occur in the restroom.

The hearing officer, after detailing the evidence presented to him, found petitioner guilty of fighting without a weapon as charged, based on the "officer's report & testimony" and "evidence submitted." The hearing lasted approximately twelve (12) minutes. Petitioner was punished with the forfeiture of 30 days previously accrued good time credits.[1] The reason stated for the punishment imposed was the "serious nature of [the] offense and this type of assaultive behavior will not be tolerated."

Following the finding of guilt in the disciplinary proceeding, petitioner filed a Step 1 grievance on September 19, 2002 averring he did not assault offender Sargent, arguing there was insufficient evidence to find he did assault Sargent because he did not have any blood on, or injuries to, his hands, and requesting offender Robinson as a witness for his defense. Petitioner's grievance was denied on October 4, 2002 for the following reasons:

> Major disciplinary report #200300155504 and related documents have been reviewed. Based on the preponderance of credible evidence presented, you were found guilty as charged. No abuse of discretion by the hearing officer was found and no procedural errors noted. Fighting will not be tolerated and, you were identified by staff [Officer Alexander] as a participant. Decision shall stand as rendered.

---

[1] Other punishment with which petitioner was assessed constituted changes in the conditions of petitioner's confinement and does not implicate the Due Process Clause of the United States Constitution. *See Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 2297 (1995); *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997).

On October 15, 2002, petitioner filed a Step 2 grievance, again alleging the evidence was insufficient to support his disciplinary conviction because here were no bruises or blood on his hands, alleging Officer Alexander did not see petitioner assault Sargent, questioning why both he and Robinson were charged with committing the assault, but Robinson was found to have an alibi, if Officer Alexander was, in fact, an eyewitness to the incident, and complaining of the absence of requested witnesses at his hearing. Petitioner's grievance was denied November 26, 2002 for the following reasons:

> Major case #20030016428 has been reviewed by this office. There were no due process errors. The Hearing Officer based the finding of guilt on the evidence presented. There was nothing to indicate that staff submitted false statements or reports. You requested no witnesses prior to or during your hearing. Another offender's disciplinary history will not be addressed. Your punishment was within agency guidelines. The decision of the Hearing Officer shall stand as rendered.

Thereafter, petitioner filed the instant federal habeas corpus application with this Court requesting this Court reverse the finding of guilt in his disciplinary hearing, order the restoration of his lost time-earning status and good conduct time, and order the lifting of any other sanctions imposed.

III.
*DE MINIMIS* LOSS

There is no constitutional guarantee to assure credit for good conduct while in prison. *See Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Texas law provides that good time credits apply only to eligibility for release on parole or mandatory supervision and do not affect the length of an inmate's sentence. *See Tex. Gov't Code Ann.* § 498.003; *Ex parte Montgomery*, 894 S.W.2d 324, 328 (Tex.Crim.App. 1995). State prisoners in

Texas "have no protected liberty interest in parole." *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir.), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997). Because there is no protected liberty interest in parole, a Texas inmate can only establish a basis for federal habeas corpus relief if the good time credit sanction affects his eligibility for early release on mandatory supervision. *See Malchi v. Thaler*, 211 F.3d 953 (5th Cir. 2000).

Petitioner appears to be eligible for mandatory supervision. The Fifth Circuit has recognized, however, that even if a Texas prisoner is eligible for mandatory supervision, he "does not necessarily have a constitutional expectancy of release on a particular date." *Malchi*, 211 F.3d at 958. Accordingly, the Fifth Circuit has acknowledged the possibility "that a de minimis delay of a few days in a prisoner's mandatory supervision release would not give rise to a constitutionally cognizable claim." *Id.*[2] The Fifth Circuit did not establish a bright line rule for when a delay in release or a loss of good time credits would be de minimis. The Fifth Circuit subsequently suggested, however, that the loss of thirty (30) days good time might be de minimis. *Richards v. Dretke*, 394 F.3d 291, 294 n. 5 (5th Cir. 2004) ("A 30-day delay of mandatory supervision release might be de minimis and therefore not give rise to a due process claim.").

Following this line of reasoning, district courts within the Fifth Circuit have concluded that, depending on the length of an inmate's sentence, a 30-day delay in release on mandatory supervision is de minimis and insufficient to implicate constitutional due process concerns. *See Teague v. Dretke*, 384 F.Supp. 2d 999, 1002-1003 (N.D.Tex. July 26, 2005) (for an inmate serving a 45-year sentence, the loss of 30 days of good conduct time is de minimis because it

---

[2]The court stated that six (6) months would be more than de minimis. *Id.*

represents 0.18 % of his total sentence.); *White v. Dretke*, Civil No. H-05-0020 (S.D. Tex. June 28, 2005); *Carroll v. Dretke*, 2005 WL 2467698, *5 (S.D.Tex. Oct.6, 2005) ("the deprivation of thirty days of good-conduct credits from a prisoner serving a thirty-five year sentence seems to fall within the range of a de minimis delay that does not give rise to constitutional concerns" as the loss of good-conduct credits equated to less than one-fourth of one percent of the petitioners' total sentence); *Martin v. Director, TDCJ-CID*, 2006 WL 981988, *3+ (E.D.Tex. Apr 11, 2006) (the loss of 30-days is arguably de minimis). Similarly, district courts have also found that disciplinary sanctions of as little as 1 or 2 days of good time credits pose only a de minimis delay in a prisoner's potential release, and do not give rise to a constitutional claim. *See Cartwright v. Dretke*, 2005 WL 2318703, *2 (N.D.Tex. Sept.20, 2005) (loss of 1 day of good time on an 8-year sentence); *Gallman v. Dretke*, 2005 WL 2493273, *2 (N.D.Tex. Oct.7, 2005) (loss of 2 days of good time on a 40-year sentence); *Hay v. Dretke*, 2006 WL 696647 (S.D.Tex. Mar 16, 2006) (loss of 1 day of good time on a 5-year sentence).

Here, petitioner is serving a 10-year prison sentence. Thirty (30) days is less than 1% of petitioner's sentence. It is certainly arguable that the loss of thirty (30) days good time credits will pose no more than a de minimis delay in petitioner's potential early release from prison on mandatory supervision and, thus, the procedural protections found in the Due Process Clause should not apply in this case. It is the opinion of the undersigned that the thirty (30) days forfeited good time is de minimis and that petitioner is not entitled to federal habeas corpus relief. The merits of petitioner's grounds are addressed below in the alternative.

## IV.
## PETITIONER'S ALLEGATIONS

Petitioner contends his federal constitutional rights were violated with regard to the

September 17, 2002 disciplinary proceeding in Case No. 20030016428 in the following respects:

    1.      The Hearing Officer violated petitioner's right to due process when he

         failed to:

         a.      admit a written statement from the victim into evidence;

         b.      allow three (3) requested witnesses to testify at the disciplinary hearing and failed to document why the requested witnesses were not allowed to testify;

         c.      investigate further when presented with evidence which contradicted the offense report and state the evidence relied upon in finding petitioner guilty; and

         d.      weigh the credible evidence.

    2.      Counsel substitute was ineffective for failing to interview petitioner's witnesses before the disciplinary hearing, obtain statements from said witnesses, obtain medical evidence, obtain photographic evidence, or act as an advocate at the hearing; and

    3.      The charging officer made a false statement in her offense report to the effect that she "saw the entire incident."

V.
EXHAUSTION OF ADMINISTRATIVE REMEDIES

Respondent asserts petitioner has failed to adequately exhaust his administrative remedies because he failed to assert any of the claims raised herein in both his Step 1 and Step 2 grievances. Respondent argues the claims are, therefore, unexhausted, procedurally defaulted, and subject to dismissal on this basis.

At Step 1 of the grievance process, petitioner argued he was actually innocent of the charged disciplinary offense, that there was insufficient evidence to prove his guilt, and that the charging officer was not credible. At Step 2, petitioner argued the same claims raised in Step 1,

but also argued he asked for certain witnesses to appear at the hearing, but was denied such witnesses. It does appear petitioner's claims were not properly exhausted at the administrative level and are now procedurally barred from this Court's consideration. Therefore, if the petition is not denied based upon the de minimis loss, then petitioner's claims are unexhausted and, as a result, procedurally defaulted. Nonetheless, the undersigned will address the merits of each claim.

## VI.
## MERITS

If the thirty (30) days loss is not de minimis, then there is a protected liberty interest, and petitioner can seek relief by way of federal habeas corpus. In the prison disciplinary context, the United States Supreme Court has held that due process demands only that there be "some evidence" to support a disciplinary officer's decision. *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* The Court noted that a reviewing court is not required to examine the entire record of a proceeding, independently assess witness credibility, or weigh the evidence. *Id.* Minimum procedures that must be followed in disciplinary hearings include 1) providing advance written notice to the accused of the claimed violation, 2) providing a written statement by the factfinder of the evidence relied upon and reasons for the disciplinary action taken, and 3) allowing the accused inmate to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963,

2979, 41 L.Ed.2d 935 (1974).

In order to prevail in this federal habeas corpus proceeding, petitioner must show his due process rights were violated during the disciplinary process. The Fifth Circuit has declared that the findings of the prison disciplinary hearing shall not be disturbed unless they are arbitrary and capricious. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). Further, the federal courts do not review the sufficiency of the evidence since a finding of guilt requires only the support of some facts, or <u>any evidence at all</u>. *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986).

### A. <u>Victim's Statement</u>

Petitioner initially claims the Hearing Officer violated his right to due process when he failed to admit a written statement from the victim into evidence. Petitioner claims he obtained a statement from the victim, inmate Sargent, wherein he stated he did not know who had assaulted him but that it was not petitioner. Petitioner claims he gave this statement to the investigating officer, Sergeant Lujan, "who stated he would place the statement in the case file for later use at [petitioner's] disciplinary hearing." Petitioner claims Lujan failed to place said statement in the file, that it was lost, and that said statement was "not available to [petitioner] for defense at his disciplinary hearing." Petitioner has not provided the Court with a copy of this purported statement.

Petitioner referenced the purported statement from offender Sargent at the beginning of the hearing and made known his position as to what he believed was the content of Sargent's statement. Petitioner did not, however, object to or challenge the absence of the statement from the file, nor did petitioner object to, question, or comment upon counsel substitute's statement that they did not have documentary evidence to present. Moreover, petitioner's allegation herein

acknowledges that such statement was lost and not available at the hearing, and petitioner did not seek additional time in which to secure another statement from the victim.  As the statement was not in the investigative file and was not presented at the hearing, the undersigned cannot find the Hearing Officer intentionally excluded exculpatory documentary evidence available to him at the hearing, nor can the undersigned find petitioner took all steps necessary to ensure such documentary evidence was available at the hearing.  Petitioner has not demonstrated the Hearing Officer's actions denied him federal due process.

### B.  Witness Testimony

Petitioner next alleges the Hearing Officer violated his right to due process because he refused to allow three (3) requested witnesses to testify at the disciplinary hearing and failed to document, in writing, the reasons why the requested witnesses were not allowed to testify.  Petitioner maintains the witnesses would have provided non-frivolous evidence that would have exonerated petitioner.  Petitioner contends the denial of the witnesses precluded petitioner from presenting any defense on his behalf.[3]

Under this ground, petitioner does not identify the witnesses he claims he requested and that the Hearing Officer refused.  In his argument to this Court, petitioner references the "affidavits of witnesses" purportedly attached as Exhibit A.  Although there is no "Exhibit A" attached, there is a July 3, 2003 affidavit from one Mark Watson attached to petitioner's memorandum wherein the affiant averred he "was with or in sight of Offender Roberts from the time we went to recreation until after Offender Sargent was removed from the dorm, and Offender Roberts never assaulted Offender Sargent."  Under his "Point Three," petitioner identifies three witnesses (offenders Holland, Garcia, and Travis) as part of his allegation that he

---

[3] Petitioner did not assert this claim under his Step 2 grievance, filed nearly a month after the hearing.

was denied effective assistance of counsel because counsel failed to obtain statements from these witnesses. In the second to last paragraph under this point, petitioner contends "[t]he three witnesses petitioner Roberts requested to testify at his hearing would have presented credible, non-frivolous evidence and testimony that would show beyond a reasonable doubt Roberts was not guilty of the charged offense, thus the outcome of the hearing would have been different." Under his "Point Five," petitioner specifically states he "requested offenders Sargent, Robinson, Holland, and Garcia be called to testify in person on his behalf."

The record, however, reflects petitioner did not request any witnesses in advance of the hearing or at the hearing. In fact, at the hearing, petitioner's counsel substitute specifically stated petitioner did not have any witnesses. Petitioner did not object to nor correct this statement of counsel substitute. The record does not indicate the Hearing Officer denied petitioner any witnesses, thus, no reasons for denying a witnesses were required to be given. The undersigned finds petitioner has not demonstrated he identified and requested witnesses to testify at his disciplinary hearing, that any such witnesses were denied, or that the Hearing Officer violated TDCJ-CID policy in failing to set forth written reasons in the hearing record for denying any witnesses. Moreover, petitioner's claims that the testimony of the purported witnesses would have exonerated him is conclusory and unsupported. Other than stating the witnesses would have provided "credible, non-frivolous evidence and testimony that would show beyond a reasonable doubt [petitioner] was not guilty of the charged offense," petitioner does not provide the Court with the testimony he contends could have, or would have, been supplied, nor has he demonstrated the witnesses themselves would have even testified. This claim should be denied.

C. Further Investigation

Petitioner next contends the Hearing Officer violated his right to due process because he failed to investigate further when advised of evidence which would contradict the offense report. Specifically, petitioner maintains he stated, at the hearing, that documentary evidence existed which would contradict the disciplinary report, to wit: medical evidence showing no scratches, bruises, or other physical damage to petitioner, photographic evidence showing no blood on petitioner despite profuse bleeding by the victim, and witness statements from eyewitnesses who would provide statements showing petitioner was not involved in the assault. Petitioner argues the Hearing Officer "refused to request this easily obtainable documentary evidence" and failed to document in the hearing record her reasons for refusing "to accept into evidence [petitioner's] proffered documentary evidence." Petitioner cites TDCJ-CID rule GR-106 VI.B.7 as stating:

> The failure of the accused offender to present non-frivolous evidence to contradict the disciplinary report will permit the report to be the only evidence used against the offender. If, on the other hand, the accused offender presents non-frivolous evidence which, if true, would contradict the facts alleged in the disciplinary report, the disciplinary hearing officer must take at least one of the following steps before he/she can find the offender guilty:
>
> a)   question the charging officer concerning the non-frivolous evidence presented;
>
> b)   examine additional documentary evidence (which does not include investigation reports or written statements by the charging officer or witnesses); or
>
> c)   question other witnesses concerning the non-frivolous evidence presented.

Petitioner concludes the Hearing Officer's "failure to perform any of the three steps noted above before finding [petitioner] guilty of the alleged offense" violated petitioner's Constitutional right to procedural due process.

First, the information detailed by petitioner was never offered as evidence at the disciplinary hearing. Instead, petitioner referenced medical evidence, photographic evidence and witness statements which were not requested or produced at the hearing. Therefore, it is not at all clear the Hearing Officer violated any TDCJ-CID regulations. Assuming, solely for the purpose of argument, that TDCJ-CID regulations were, in fact, violated, such does not entitle petitioner to relief. To the extent TDCJ's policies afford an offender with greater protections than those specifically dictated by *Wolff* and previously referenced in this report, such protections do not rise to the level of federally cognizable due process concerns. Regulations primarily designed to guide correctional officials in the administration of a prison are not designed to confer rights on inmates. *Sandin*, 515 U.S. at 481-82. Even the use of mandatory language in prison administrative rules and regulations do not create Constitutional procedural due process interests. *Id.* at 483-84. Accordingly, petitioner's claim that the Hearing Officer's failure to follow TDCJ procedures amounted to a violation of his procedural due process rights under the United States Constitution is without merit. This issue does not present a cognizable claim on federal habeas review.

### D. Weighing the Evidence

Petitioner next argues the Hearing Officer violated his right to federal due process by failing to properly weigh the credible evidence. Petitioner notes the institution's rule that "after hearing all of the evidence," the Hearing Officer is to decide the issue of guilty "based on the preponderance of the credible evidence." Petitioner contends that "despite the overwhelming weight of evidence pointing towards [his] innocence of the charged offense," the Hearing Officer

found petitioner guilty of the charged offense. Petitioner concludes the Hearing Officer violated petitioner's right to procedural due process "by failing to attach weight to the proffered non-frivolous evidence that overwhelmingly showed [petitioner's] innocence of the charged offense." Petitioner also contends the Hearing Officer failed to identify what evidence he considered to arrive at a finding of guilty on Form I-47MA as required by TDCJ-CID policy. Petitioner argues the Hearing Officer's notation of "evidence submitted," without specifically identifying the evidence, was insufficient. Petitioner concludes the Hearing Officer's "gross failures to follow mandated TDCJ written policy deprived petitioner of his constitutional procedural due process."

Again, petitioner confuses evidence which might have been offered with what evidence was actually offered. As set forth previously, petitioner offered no documentary evidence at the hearing. Additionally, this Court does not conduct a typical sufficiency of the evidence analysis in reviewing a prison disciplinary proceeding. Instead, this Court reviews the proceeding only to determine whether the finding of guilt in a prison disciplinary proceeding is supported by some facts or any evidence at all. This Court does not re-weigh the evidence nor re-evaluate the weight given to the evidence by the Hearing Officer. Here, there was some evidence, *i.e.*, the charging officer's report and testimony, to support the Hearing Officer's finding of guilt. The guilty finding is not subject to being overturned on the basis that there was, or may have been, contradictory evidence before the Hearing Officer.

Further, petitioner's claim that the Hearing Officer's failure to follow TDCJ policy by not detailing the evidence relied upon in determining his guilt amounted to a violation of his procedural due process rights under the United States Constitution is without merit. This issue does not present a cognizable claim on federal habeas review.

### E. Effectiveness of Counsel Substitute

Petitioner argues counsel substitute was ineffective for failing to interview petitioner's witnesses before the disciplinary hearing, failing to obtain statements from said witnesses, failing to obtain medical evidence or obtain photographic evidence, and for failing to act as an advocate at the hearing. Petitioner contends he requested counsel procure witness statements from three witnesses (offenders Holland, Garcia, and Robinson) prior to the hearing in order to present said statements at the hearing. Petitioner maintains counsel advised it was the job of the Grievance Coordinator to interview petitioner's three identified witnesses and obtain their statements and, thus, refused to take such actions. Petitioner avers he filed an I-60 (Inmate Request to Official) requesting the Grievance Coordinator come speak to him, but that the coordinator did not respond to his request. Citing a section of the *Disciplinary Rules and Procedures for Offenders* handbook, petitioner contends it was the responsibility of counsel substitute to interview the witnesses and obtain written statements from those witnesses who would not be able to attend the hearing. Petitioner concludes the failure of counsel to perform these mandatory responsibilities as outlined in the handbook denied petitioner procedural due process.[4]

Petitioner also argues counsel was ineffective for failing to produce documentary evidence requested by petitioner, *viz.*, medical evidence showing no scratches, bruises or other physical trauma to petitioner's hands as alleged in the disciplinary report, photographic evidence showing no blood on petitioner's clothing or body despite documentation of profuse bleeding by the victim, and witness statements from eye witnesses who would provide material evidence

---

[4] Petitioner did not raise these allegations against counsel at the hearing nor did he raise them in his administrative grievances.

showing petitioner was not involved in any way in the assault.

Again, petitioner never presented the complaints he now makes about counsel substitute's inadequacies to the Hearing Officer when counsel substitute stated there was no documentary evidence or any witnesses to present. Further, petitioner's claim of ineffective assistance of counsel is insufficient to raise a constitutional issue because "inmates do not 'have a right to either retained or appointed counsel in disciplinary hearings.'" *Baxter v. Palmigiano*, 425 U.S. 308, 315, 96 Sup. Ct. 1551, 47 L.Ed.2d 810 (1976). Without the right to counsel, petitioner could not be deprived of the effective assistance of counsel and, consequently, may not complain about the adequacy of the representation he received. As a prison inmate does not have a right to either appointed or retained counsel at prison disciplinary hearings, there is no constitutional violation on which habeas relief could be granted on the basis of ineffective assistance of counsel substitute at a disciplinary hearing. *See Enriquez v. Mitchell*, 533 F.2d 275, 276 (5th Cir. 1976). Petitioner's claim is without merit and should be denied.

## F. False Statement in Offense Report and Perjury at Hearing

Petitioner argues the charging officer made a false statement in her offense report, and committed perjury at the hearing, when she stated she "witnessed [the] entire incident." Specifically, petitioner claims the charging officer "wrote two disciplinary reports charging each of them (petitioner and inmate Robinson) with the assault" wherein she "claimed to have witnessed both Roberts and Robinson assaulting Sargent in the shower area – a complete falsehood." Petitioner contends the falsity of the charging officer's statements is demonstrated by the fact that after the assault was discovered, two (2) person to person searches of the entire dorm, of persons of every race, was conducted. Petitioner maintains that if the charging officer

had "actually seen the assault, she could have at least identified the race of the attackers, thus narrowing down the scope of the search." Petitioner further argues that had the charging officer "actually witnessed the assault, she would have, according to the TDCJ policy, immediately removed the participants" and, thus, "there would have been no need for a person to person search of the entire dorm population." Petitioner also argues the falsity of the charging officer's statement that she saw the incident is further shown by the fact that Travis Robinson was charged with the same unlawful conduct as petitioner, but charges against him were dropped after "his alibi checked out." Petitioner contends that if the officer actually witnessed petitioner and Robinson assaulting Sargent as she claimed, then Robinson could not have had an alibi which exonerated him. Petitioner concludes his due process rights were violated by the "arbitrary purposeless use of authority by [the officer] fabricating disciplinary charges" against petitioner.

It is well settled that the credibility of witnesses is left to the discretion of the hearing officer. *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). This court is not free to substitute its judgment as to the credibility of the charging officer or any other witnesses for that of the hearing officer. The Hearing Officer accepted the statements of the charging officer based on a determination, whether implicit or explicit, that the charging officer was credible. This court must defer to the Hearing Officer's acceptance of the officer's statements and testimony. Petitioner's claim of a violation of due process must be denied.

## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United

States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner WILLIAM BRANDON ROBERTS be, in all things, DENIED.

VIII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file-marked copy of this Report and Recommendation to petitioner by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 15th day of August 2006.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).